UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **Allan Padilla Valenzuela,**<br><br>**Carson Lee Hoes,**<br><br>**Jared McKelvey,**<br><br>**Thomas Stinson,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**Islamic Republic of Iran Tehran, IRAN,**<br><br>**Islamic Revolutionary Guard Corps,**<br><br>**Defendants.** | Civil Action No. 25-1814 |

## COMPLAINT

## PARTIES

1.      Plaintiff Allan Padilla Valenzuela is an American citizen and a sergeant in the United States Army. He was critically injured in the January 28, 2024 drone attack on Tower 22, a U.S. Military base which was his duty station, which is located in Northeastern Jordan near the Syrian border (hereinafter "Tower 22"). He is over 19 years of age.

2.      Plaintiff Carson Lee Hoes is an American citizen and a soldier in the United States Army. Plaintiff Hoes was injured in the January 28, 2024 drone attack on Tower 22, his duty station. Hoes is over 19 years of age.

3.      Plaintiff Jared McKelvey is an American citizen and a sergeant in the United States Army. Plaintiff McKelvey was injured in the January 28, 2024 drone attack on Tower 22, his duty station. Plaintiff McKelvey is over 19 years of age.

1

4.      Plaintiff Thomas Stinson is an American citizen and a soldier in the United States Army.

He was injured in the January 28, 2024 drone attack on Tower 22, his duty station. Plaintiff

Stinson is over 19 years of age.

5.      Defendant, the Islamic Republic of Iran ("Iran"), is a foreign sovereign state. Iran is a

longtime state supporter of terrorism against the United States of America and the State of Israel,

including through its Islamic Revolutionary Guard Corps ("IRGC") and all of its divisions,

Shahed Aviation Industries, and various state- and nonstate partners and military proxies, which

include notorious terrorist organizations such as Hamas and Hezbollah, but also various militias

operating in Syria and Iraq under the Iranian supported and funded umbrella group The Islamic

Resistance in Iraq, which encompasses existing U.S.-designated Foreign Terrorist Organizations

such as Kataib Hezbollah, Asaib Ahl al-Haq, Harakat Hezbollah al-Nujaba, Kataib Sayyid al-

Shuhada, and Ansar Allah-Awfiya.

6.      Defendant, Islamic Revolutionary Guard Corps and all of its branches and subsidiaries

including Quds Force, is an instrumentality of the Defendant Islamic Republic of Iran and a U.S.

designated Foreign Terrorist Organization.

7.      The Defendants provided material support and resources to the Islamic Resistance of

Iraq, which has claimed responsibility for the drone attack on Tower 22 on January 28, 2024.

8.      The facts set forth in this complaint fulfill the requirements of 28 U.S.C. §

1605A(a)(2)(ii) and the private right of action in section (c) of the statute against Iran.

## JURISDICTION OVER STATE SPONSOR OF TERRORISM IRAN

9.      Defendants are not immune from this Court's jurisdiction because Plaintiffs seek money

damages for personal injuries that were caused by "an act of torture, extrajudicial killing, . . .

hostage taking, or the provision of material support or resources for such an act," as provided for in the Terrorism Exception.  28 U.S.C. § 1605A(a).

10.     Defendant Iran is now and has been designated a State Sponsor of Terrorism since January 19, 1984, pursuant to Section 6(j) of the Export Administration Act of 1979, 50 U.S.C. Appx. § 2405(j), and section 620A of the Foreign Assistance Act of 1961, 22 U.S.C. § 2371.

11.     Defendant IRGC is now and has been designated a State Sponsor of Terrorism since April 2019 pursuant to Section 6(j) of the Export Administration Act of 1979, 50 U.S.C. Appx. § 2405(j), and section 620A of the Foreign Assistance Act of 1961, 22 U.S.C. § 2371.

12.     28 U.S.C. § 1605A(a)(2)(A)(i)(I) allows a court to hear claims against a foreign state related to an act of state-sponsored terrorism if the claimants or the victims meet certain requirements in other provisions of 28 U.S.C. § 1605A(a)(2) and "the foreign state was designated a state sponsor of terrorism . . . as a result of such act . . . and remains so designated." Because Iran was "designated as a state sponsor of terrorism at the time" of the January 28, 2024 act of extrajudicial killing from which Plaintiffs' injuries arise, and because it "remains so designated" at the time of the filing of those claims, the requirements of 28 U.S.C. § 1605A(a)(2)(A)(i)(I) are met.

## FACTUAL ALLEGATIONS

## PLAINTIFFS' DEPLOYMENTS TO TOWER 22

13.     A 2019 graduate of Homewood High School in Homewood, Alabama, Plaintiff Allan Padilla Valenzuela enlisted in the U.S. Army Reserve in January 2019. In the Army, Plaintiff Padilla Valenzuela was trained as a Horizontal Construction Engineer.

14.     In August 2023, Plaintiff Padilla Valenzuela was called up to active duty and deployed overseas, eventually to Jordan.

15.     Plaintiff Carson Lee Hoes is a 2020 graduate of Colquitt County High School in Georgia. Hoes enlisted in the reserves in November 2020 to help pay for college. In August 2023, Plaintiff Hoes was called up and deployed overseas, eventually via Iraq and Kuwait to Jordan, where he worked as a vertical construction engineer.

16.     Plaintiff Jared McKelvey graduated from High School in Priceville, Alabama in 2016. McKelvey enlisted in the U.S. Army Reserves in July 2019. Plaintiff McKelvey was deployed in August 2023, first to Texas and then via Kuwait to Jordan, where he worked as both a horizontal and a vertical construction engineer.

17.     Plaintiff Thomas Stinson is a 2022 graduate of Elba High School in Alabama. Plaintiff Stinson enlisted in the United States Army Reserves prior to graduating from high school. Prior to deployment, Plaintiff Stinson worked as an electrician. Plaintiff Stinson was deployed in August 2023, starting in Texas and then via Iraq and Kuwait to Jordan, where he worked as a vertical construction engineer with the rank of E4.

18.     In Jordan, Plaintiffs' duty station was a location known as "Tower 22" near the Syrian border.

19.     Tower 22 is an installation housing U.S. engineering, aviation, logistics, and security forces. Tower 22 serves as a logistical hub for U.S. forces in Syria, including for troops stationed at al-Tanf, a base near the intersection of the borders of Iraq, Syria and Jordan.

20.     In addition, Tower 22 serves as a transit and logistics hubs to transfer food, medicine, and supplies to Syrian refugees in the Rukban camp, and thus serves a vital humanitarian purpose.

21.     At the time of Plaintiffs' deployment, approximately three hundred and fifty (350) United States troops were stationed at Tower 22, along with members of the Jordanian military and both Jordanian and American civilian employees and contractors.

## HISTORY OF ATTACKS BY IRAN AND ITS PROXIES
## AGAINST U.S. SERVICE MEMBERS

22.    Ever since Iran's pro-west monarchy was overthrown in 1979, Iran has engaged in a

consistent pattern of attacks and hostage-taking, including through proxies and surrogates,

against U.S. service members stationed abroad.

23.    From November 1979 through January 1981, Iran held fifty-two (52) American hostages

for four hundred and forty-four (444) days when individuals backed by the Ayatollah Khomeini

seized the U.S. Embassy in Tehran, Iran.

24.    In 1983, Hezbollah, an Iranian paramilitary proxy, carried out two attacks against

American interests in Lebanon. One attack was the bombing of the Marine barracks in Beirut,

which killed two hundred and forty-one (241) Americans. The other was an attack against the

U.S. embassy, which killed seventeen (17).

25.    In 1984 the U.S. State Department designated Iran as a state sponsor of terrorism.

26.    The 9/11 commission found that Iran provided material support to Al-Qaeda in carrying

out the September 11, 2001, attacks which resulted in the deaths of two thousand nine hundred

and ninety-six (2,996) Americans.

27.    In April 2019, the United States designated the Iranian Revolutionary Guard Corps a

foreign terrorist organization.

28.    On December 31, 2019, Iran-backed militants and Iraqi demonstrators attempted to seize

the U.S. embassy in Baghdad.

29.    In January 2020, following the killing of Qasem Soleimani, a high-ranking official in the

Iranian Revolutionary Guards Corps by a U.S. drone strike, Iran launched more than a dozen

ballistic missiles at two Iraqi bases housing American military personnel.

## PLAINTIFFS WERE SERIOUSLY INJURED IN THE JANUARY 28, 2024 ATTACK CONDUCTED WITH AN IRANIAN-MADE SHAHED COMBAT DRONE.

30.    On January 28, 2024, at approximately 5:00 AM, Plaintiffs were asleep in their quarters at Tower 22, which, as stated above, is a U.S. outpost in Jordan near the border with Syria, when the outpost was attacked by an Iranian-made Shahed combat drone, developed by Iranian company Shahed Aviation Industries, an entity associated with the Islamic Revolutionary Guards' Aerospace Force.

31.    The Plaintiffs' quarters at Tower 22 were containerized housing units, known as CHUs, essentially a trailer subdivided into three rooms, with two soldiers in each room.

32.    The drone struck the CHU where Plaintiff Padilla Valenzuela was sleeping in the middle room. Plaintiffs Stinson and McKelvey were sleeping in the room on the end furthest from where the drone struck. Three U.S. soldiers—Sgt. William Rivers, aged 46, Specialist Kennedy Sanders, aged 24, and Specialist Breonna Moffett, aged 23—were killed in the attack. Sanders and Moffet were in the room struck by the drone and were killed.

33.    Plaintiff Padilla Valenzuela's roommate was Sgt. Rivers, who was killed. Plaintiff Padilla Valenzuela was critically wounded with life threatening polytrauma injuries and a severe traumatic brain injury.

34.    Plaintiffs Stinson, McKelvey, and Hoes were also seriously injured in the attack with traumatic brain injuries, among other injuries.

35.    Plaintiff Stinson and McKelvey shared a room in the building adjacent to the room occupied by Plaintiff Padilla Valenzuela and Rivers.

36.    Plaintiff Hoes was in an adjacent building that was also damaged in the attack.

37.    The drone attack on Tower 22 was an extrajudicial killing because it was a killing not authorized by a court, nor was it lawfully carried out under the authority of a foreign nation.

38.     The drone attack on Tower 22 was a killing carried out by a non-state actor that received

material support from Iran and the Iranian Revolutionary Guards Corps, and the Plaintiffs'

injuries resulted from the same instrumentality as the extrajudicial killing, because Plaintiffs

were injured in the same drone explosion that killed the three U.S. soldiers.

39.     Along with the three soldiers killed in the attack, at least forty (40) were injured. Eight

(8) of the injured were medically evacuated from Jordan.

40.     Plaintiff Padilla Valenzuela was intubated at the scene due to respiratory failure. Plaintiff

Padilla Valenzuela suffered multiple open and closed fractures of his extremities, extensive soft

tissue injuries, facial injuries, traumatic retinopathy, shrapnel wounds with retained shrapnel near

his spine and in other areas, and a severe diffuse traumatic brain injury.

41.     After intubation and emergency treatment at the scene, Plaintiff Padilla Valenzuela was

evacuated first to Baghdad, then to Landstuhl, Germany, where he remained intubated for an

extended time before he was finally transported to Walter Reed Hospital on February 8, 2024.

42.     Plaintiff Padilla Valenzuela's injuries were so severe that he has no memory of the attack

or of the days he spent at the military hospital in Germany. Since returning to the United States,

Plaintiff Padilla Valenzuela has had to relearn how to swallow, how to walk, and how to feed

himself, among other daily activities.

43.     Plaintiff Padilla Valenzuela has had to undergo multiple surgeries and continues to

undergo extensive rehabilitation. He may require further surgeries, and he will be left with

numerous permanent impairments as a result of injuries to his brain, muscular system, and

skeletal system once he reaches maximum medical recovery. He lost 35% of his triceps and has

had numerous reconstructive surgeries, skin grafts, and has retained shrapnel in his body. He still

suffers from vision impairment.

44.     Plaintiff Padilla Valenzuela was awarded the Purple Heart.

45.     Plaintiff Stinson was sleeping in the CHU that was hit by the drone, in the room next to Plaintiff Padilla Valenzuela's. Plaintiff Stinson remembers waking up after the strike covered in debris. While he was digging out, he could smell burning flesh, hair and chemicals.

46.     Once out, Plaintiff Stinson immediately ran to help his CHU mates until he was told by a medic to go to the bunker. It was not until he was in the bunker and adrenalin started to wear off that he realized he was covered in blood and that he was in pain.

47.     Plaintiff Stinson was airlifted to an army hospital in Iraq and then to another hospital in Germany. From there, he was sent to Walter Reed Army Medical Center. He was not discharged until March.

48.     Plaintiff Stinson suffered from a ruptured eardrum, third degree burns on the back of his upper arm, his shoulder and on to the top of his back. His wrist was broken in two places. He has also been diagnosed with a traumatic brain injury, post-traumatic stress disorder, and anxiety. Stinson is considered 80% disabled by the Army.

49.     Plaintiff Stinson was awarded both the Purple Heart and the Bronze Star.

50.     Plaintiff McKelvey also awakened to find himself pinned under rubble with the smell of burning flesh and burning chemicals in the air.

51.     Plaintiff McKelvey suffered from shrapnel wounds, burns, and a traumatic brain injury, and he has been diagnosed with post-traumatic stress disorder, anxiety, and alcohol use disorder.

52.     After the attack, Plaintiff McKelvey was sent to a week-long resiliency course at Muwaffaq Salti Air Force Base in Jordan. From there, he was transferred to the Prince Hassan Air base in Jordan. He returned home in June 2024.

53.     Plaintiff McKelvey received a Purple Heart, ARCOM with C device, the ARCOM with V

device, the Army Achievement Medal, the National Defense Service Medal, the Global War on

Terrorism Expeditionary Medal, the Global War on Terrorism Service Medal, the Army Service

Ribbon, and the Armed Forces Reserve Medal.

54.     Plaintiff Hoes, who suffered a traumatic brain injury, was sent to Muwaffaq Salti Air

Base ("MSAB") for treatment following the attack. He was diagnosed with a 70% disability by

the Army. Plaintiff Hoes was then sent to Prince Hassan Air Base where he continued to work as

a vertical engineer.

55.     Plaintiff Hoes continues to suffer substantial impairments consistent with a traumatic

brain injury and post-traumatic stress disorder resulting from the attack.

56.     Plaintiff Hoes was awarded a Purple Heart, the Combat Action Badge, and the Army

Commendation Medal with a C Device.

## THE ISLAMIC RESISTANCE IN IRAQ, A COALITION OF MILITIAS UNDER THE DIRECTION OF THE ISLAMIC REPUBLIC OF IRAN, CLAIMED RESPONSIBILITY FOR THE DRONE ATTACK ON TOWER 22.

57.     In a statement posted to Telegram, an organization called the Islamic Resistance in Iraq

claimed responsibility for the drone attack on Tower 22.

58.     The Islamic Resistance of Iraq emerged after October 18, 2023, as a coalition of Iran-

backed Iraqi militias coordinating to present a united front with unified branding in conducting

and publicizing attacks on U.S. troops in Iraq and Syria.

59.     The attack on Tower 22 was the first time U.S. soldiers were killed by hostile fire since

the start of the Israel-Hamas war, after an estimated one hundred and fifty (150) attacks by

Iranian-based militias on American bases in Iraq and Syria since October 7.

60. The Washington Institute for Near East Policy, a research institution with a mission "to advance a balanced and realistic understanding of American interests in the Middle East and to promote the policies that secure them," has concluded that the Islamic Resistance in Iraq is "[a]n umbrella term used to describe operations by all Iran-backed Iraqi militias conducted in solidarity with the 2023-24 war between Hamas and Israel."

61. As described by the Washington Institute for Near East Policy, the Islamic Resistance in Iraq "is not a group itself, but a collective mechanism for claiming attacks by existing U.S.-designated Foreign Terrorist Organizations such as Kataib Hezbollah, Asaib Ahl al-Haq, Harakat Hezbollah al-Nujaba, Kataib Sayyid al-Shuhada, and Ansar Allah-Awfiya."

62. According to the Washington Institute, "Using a generic, no-logo brand is perhaps the ultimate extension of the 'facade strategy' that Iran and its proxies have used since 2019 to avoid accountability for attacks on Americans."

63. The Washington Institute has concluded that such coordination "strongly suggests that Iran's Islamic Revolutionary Guard Corps-Qods Force ("IRGC – QF") is corralling its many Iraqi 'resistance' proxies, which otherwise tend to argue over local leadership."

64. The IRGC-Qods Force is the Iranian government's primary arm for executing the Government of Iran's policy of supporting anti-Israeli and anti-American international terrorist and insurgent groups throughout the Middle East.

65. According to the Washington Institute, "[t]he balance of available evidence suggests that the IRGC-QF plays a role in coordinating the IRI brand. Iraqi armed groups tend to jealously guard their individual identities and the credit they derive (directly or via facade groups linked to them) from attacks, so their willingness to submerge these identities and even recant an individual group attack claim suggests that a higher power is coordinating them."

10

66.     The most powerful faction among the groups claiming participation in the Islamic

Resistance in Iraq is Kataib Hezbollah, a group of Shi'ite armed factions that have claimed more

than one hundred and fifty (150) attacks on U.S. forces in Iraq and Syria since the beginning of

the Israel-Hamas war.

### KATAIB HEZBOLLAH, THE IMMEDIATE PERPETRATOR OF THE TOWER 22 ATTACK, IS AN AGENT OF THE ISLAMIC REPUBLIC OF IRAN AND A DE FACTO BRANCH OF IRAN'S ISLAMIC REVOLUTIONARY GUARDS CORPS QODS FORCE.

67.     The United States government has identified Kataib Hezbollah ("KH") -- also known as

the Hezbollah Brigades – as the specific group operating under the branding of the Islamic

Resistance in Iraq that was responsible for the drone attack.

68.     According to the Washington Institute for Near East Policy, Kataib Hezbollah is a "[d]e

facto branch of Iran's Islamic Revolutionary Guard Corps-Qods Force (IRGC-QF)."

69.     The United States first designated Kataib Hezbollah as a Foreign Terrorist Organization

and Specially Designated Global Terrorist ("SDGT") in July 2009.

70.     Iran Quds Force commander Qassem Soleimani and Kataib Hezbollah leader Abu Mahdi

al-Muhandis were killed together in a 2020 drone strike at Baghdad's international airport, a

vivid demonstration of the close operational relationship between Iran and Kataib Hezbollah.

71.     The Washington Institute reports that "Clear and convincing evidence shows that KH is

subordinate to and partly financed by the IRGC-QF. Credible evidence shows that KH carries out

specific actions under the IRGC-QF's instructions, direction, or control. The preponderance of

evidence shows that Iran provides KH with financial assistance, military assistance, and

intelligence sharing, as well as help in selecting, supporting, and supervising its leadership."

## 28 USC § 1605A(C)

72.     A foreign state that is or was a state sponsor of terrorism is liable to U.S. Nationals for

personal injury or death caused by an act of torture, extrajudicial killing, aircraft sabotage,

hostage taking, or the provision of material support or resources for such an act if such act or

provision of material support or resources is engaged in by an official, employee, or agent of

such foreign state while acting within the scope of his or her office, employment, or agency. A

foreign state is vicariously liable for the acts of its officials, employees, or agents.

73.     On January 28, 2024, Iran and/or its instrumentalities and agents, including the

Defendants, through the provision of material support and/or resources to the perpetrators of the

attack on Tower 22, willfully and/or recklessly, violently, and forcefully caused the attack on

American nationals and/or service personnel, including Plaintiffs.

74.     The attack resulted in the deaths of three U.S. service members. The attack was an

extrajudicial killing because it was a killing not authorized by a court, nor was it lawfully carried

out under the authority of a foreign nation; rather, the attack was unlawful under international

law.

75.     Defendants provided material support and resources to the perpetrators in order to aid,

abet, facilitate, and cause the commission of acts of international terrorism, extrajudicial killing,

torture, hostage taking, personal injury, pain and suffering, and death, including the injuries to

Plaintiffs as described herein.

76.     Defendants and/or their agents were acting within the scope of their office, employment,

or agency in committing the acts alleged herein, including providing material support and/or

resources to the perpetrators, in connection with planning and carrying out the attack on Tower

22.

77.     The Islamic Republic of Iran was and is a state sponsor of terrorism as described in 28

U.S.C. § 1605(a)(2)(A)(i).

78.     Both Islamic Revolutionary Guards Corps and its Quds force are state sponsors of

terrorism as described in 28 U.S.C. § 1605(a)(2)(A)(i).

79.     As a direct and proximate result of the willful, wrongful, intentional, malicious, and

reckless acts of Iran and/or its agents and the other Defendants in providing material support for

the January 28, 2024, attack on Tower 22, Plaintiffs suffered physical pain and suffering, mental

anguish, emotional pain and suffering, and/or economic losses.

**CAUSES OF ACTION PURSUANT TO 28 USC §1605A(C)**

**COUNT I – BATTERY**

80.     On January 28, 2024, Defendants and/or their agents, through the provision of material

support and/or resources to the perpetrators of the attack on Tower 22 as described herein,

willfully, violently, and forcefully caused the attack on American nationals and/or service

personnel, including Plaintiffs, at Tower 22 on January 28, 2024.

81.     The attack resulted in the deaths of three U.S. service members. The attack was an

extrajudicial killing because it was a killing not authorized by a court, nor was it lawfully carried

out under the authority of a foreign nation.

82.     Defendants and/or their agents were acting within the scope of their office, employment,

or agency in committing the acts alleged herein, including providing material support and/or

resources to the perpetrators, in connection with planning and carrying out the attack on Tower

22 on January 28, 2024.

83.     Iran was and is a state sponsor of terrorism as described in 28 U.S.C. § 1605(a)(2)(A)(i).

84.    The Islamic Revolutionary Guards Corps and its Quds force were and are state sponsors of terrorism as described in 28 U.S.C. § 1605(a)(2)(A)(i).

85.    Defendants aided, abetted, authorized, ratified, encouraged, rewarded, and/or participated in the battery committed against Plaintiffs at Tower 22 on January 28, 2024, when terrorists intentionally used force against American nationals and/or service personnel, including Plaintiffs, without consent or legal justification.

86.    Defendants maliciously, intentionally, recklessly, and/or negligently provided funds, weapons, ammunition, military supplies, and training, among other material support, to the perpetrators of the attack on Tower 22 on January 28, 2024.

87.    Defendants and/or their agents acted intending to cause a harmful or offensive conduct with Plaintiffs and other personnel at Tower 22 on January 28, 2024, and the offensive conduct directly or indirectly resulted.

88.    Plaintiffs were foreseeably and intentionally harmed by Defendants' conduct constituting an unlawful battery.

89.    Accordingly, Plaintiffs are entitled to recovery against Defendants for the acts alleged herein.

90.    Wherefore, Plaintiffs demand that judgment be separately entered against each Defendant and in each Plaintiff's favor in connection to compensate Plaintiffs for the injuries they suffered in the January 28, 2024 attack on Tower 22.

## COUNT II – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

91.    A party is liable for intentional infliction of emotional distress when it acts in a manner that is outrageous and purposely or recklessly causes emotional distress so severe that it could be expected to adversely affect mental health and the party's conduct does cause such distress.

92.     On January 28, 2024, Defendants and/or their agents, through the provision of material

support and/or resources to the perpetrators of the attack on Tower 22, willfully and/or

recklessly, violently, and forcefully caused the attack on American nationals and/or service

personnel, including Plaintiffs.

93.     The attack resulted in the deaths of three U.S. service members. The attack was an

extrajudicial killing because it was a killing not authorized by a court, nor was it lawfully carried

out under the authority of a foreign nation; rather, the attack was unlawful under international

law.

94.     Defendants and/or their agents were acting within the scope of their office, employment,

or agency in committing the acts alleged herein, including providing material support and/or

resources to the perpetrators, in connection with planning and carrying out the attack on Tower

22 on January 28, 2024.

95.     The Islamic Republic of Iran was and is a state sponsor of terrorism as described in 28

U.S.C. § 1605(a)(2)(A)(i).

96.     Islamic Revolutionary Guards Corps and its Quds force are state sponsors of terrorism as

described in 28 U.S.C. § 1605(a)(2)(A)(i).

97.     The willful, wrongful, reckless, intentional, and malicious acts of Defendants and/or their

agents in providing material support and/or resources to the perpetrators of the attack on Tower

22 in connection with planning and carrying out the attack on Tower 22 constituted extreme and

outrageous conduct on the part of Defendants and/or their agents.

98.     As a direct and proximate result of the extreme and outrageous conduct on the part of

Defendants and/or their agents, Plaintiffs suffered severe emotional distress, entitling them to

compensatory damages.

99.     Defendants intentionally, recklessly, and/or negligently provided funds, weapons, ammunition, military supplies, and training, among other material support, to the perpetrators of the attack on Tower 22 on January 28, 2024. Plaintiffs were foreseeably and intentionally harmed by Defendant's conduct.

100.    Defendants provided material support and resources to the perpetrators in order to aid, abet, facilitate, and cause the commission of acts of international terrorism, extrajudicial killing, torture, hostage taking, personal injury, pain and suffering, and death, including the injuries to Plaintiff Padilla Valenzuela as described herein.

101.    Pursuant to 28 USC § 1605A(c), law, Plaintiffs may assert causes of action against Iran for intentional infliction of emotional distress caused by an act of extrajudicial killing, torture, or hostage-taking, or the provision of material support for such an act, and Plaintiffs physical and emotional injuries were suffered in the course of an extrajudicial killing in which three of their fellow service members were killed.

102.    Wherefore, Plaintiffs demand that judgment be entered separately against each Defendant and in each Plaintiff's favor to compensate them for the injuries they suffered in the January 28, 2024 attack on Tower 22.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that the Court:

a.      Grant each Plaintiff judgment in his favor against Defendants on Counts I through II; and

b.      Award each Plaintiff:

1.      Compensatory damages against Defendant in the amount of no less than ten million dollars;

2.    Punitive damages against Defendant in the amount of no less than thirty

       million dollars;

3.    Pre-judgment interest;

4.    Reasonable costs and expenses;

5.    Reasonable attorneys' fees; and

6.    Such other and further relief which the Court may determine to be just and

       equitable under the circumstances.

Dated: 6/10/2025

                                      Respectfully submitted,

                                      /s/ Jon C. Goldfarb
                                      Jon C. Goldfarb (AL0032)
                                      L. William Smith (AL0031)

                                      WIGGINS, CHILDS, PANTAZIS, FISHER,
                                      & GOLDFARB, LLC.
                                      301 19th Street North
                                      Birmingham, Alabama 35203
                                      Telephone No.: (205) 314-0500
                                      Facsimile No.: (205) 254-1500
                                      jcg@wigginschilds.com
                                      wsmith@wigginschilds.com

                                      /s/ Melina E. Mizel Goldfarb
                                      Melina E. Mizel Goldfarb (AL0033)
                                      3179 Green Valley Road #627
                                      Vestavia Hills, Al 35243
                                      205-386-0441
                                      melinagoldfarblaw@gmail.com

                                      Counsel for Plaintiff